Sorry to be late counsel, we've been running a little late with a lot of business. Next case up is 414-0150. Marriage of Jensen. On the front is Rachel Cunningham, you heard she met? Yes, your honor. And on the left is Jay Ferguson, you heard he? Yes, sir. Ms. Cunningham, you may proceed. Thank you, your honor. May it please the court. My name is Rachel Cunningham, and William A. Sunderman and I from Brandon Law Offices represent the appellant Philip Jensen. This case involves three issues. The first involving allocation and division of marital estate. The issue is whether a 55-45 split was an abuse of discretion. The record shows both parties contributed to the marriage, to the marital estate. There is a minimal disparity of income at the time of the hearing and the duration of a 24-year long marriage with the parties, both in a better position financially when they're divorced than when prior to the marriage. The second issue deals with dissipation. The issue raised is whether income earned subsequent to an award of payment of child support and maintenance constitutes marital property. My client argues that income earned after such an award falls under exception, an exception listed by this statute. Therefore, it's non-marital property and funds used, income used to buy personal items with that money is non-marital property, so dissipation would not be found. Counsel, can you inform us of any case law that takes that position regarding the income after payment of maintenance or whatever is left? There is no case law regarding the income as far as income earned. The cases cited in the brief have to do with partnership interest and tangible assets. But no, I cannot point to any cases that deal with actual income earned after a divorce is filed. The third issue is maintenance. And the issue raised is whether the trial court abuses discretion when it ordered the amount and duration of maintenance that significantly increases over a 10-year period. So issue number one, allocation and distribution of assets. The court ordered 55% to wife and 45% to husband, my client. 750 ILCS 5-503D lists the factors that the court is to consider when allocating and distributing assets. The court highlighted three of these factors. The first is contribution. During the marriage, the wife stayed home. She worked early in the marriage when they married in 1987, and she returned to work in 2008. During that time, she was a stay-at-home mom when the parties had decided that she would stay home with the party's three children. During the marriage, the husband started an oral dentistry and worked his way up to being an oral surgeon and opened his own practices in Central Illinois. From the day of the marriage to 2008, there was a 20-year period where the wife stayed in the home, raising the children, and the husband was a surgeon and contributing to the financial aspects of the marital estate. In 2008, there was addiction issues that the husband suffered, which eventually led to a suspension in 2011 of his license. In 2008, when the wife was employed, she was making $70,000 to $80,000 a year. The record shows that the husband primarily is responsible for the accumulation of the marital estate, but the husband is arguing that neither is entitled to larger than a 50-50 portion of the estate. The next factor that the court highlighted is disparity in earning and earning potential. The wife was a physical therapist. The husband was an oral surgeon, but in 2008, he had issues regarding addiction. He went to a treatment facility. He returned, had a relapse issue. Shortly after that, the wife filed for divorce. In 2011, his license was suspended, and he had to close his practice in Effingham. At trial, the husband had income projections that were unknown. He had no license, no income, and there was no evidence that the husband had greater earning potential than the wife at that point. There was an overestimation by the trial court that the husband's earning potential would be greater than the wife's at the point that the division was made. The last factor that the court highlighted was duration of marriage, which was 24 years. They married when the husband was still in school, and they were better off financially when they divorced than when they started. The net value of the marital asset when they divorced was nearly $1 million, about $935,000. When they divorced, the wife had steady employment, and there's no evidence of her earning capacity being greater. I don't understand the idea of comparing what they had when they started with what they had when they ended. I don't think that there aren't very many marriages. Most marriages, especially ones that involve people who have professions or jobs, they're better off later than they were when they were going to school. Right, and where wife was at the time of the distribution was she was earning an income of close to $70,000 to $80,000 a year, and husband was rebuilding his practice because he had lost his license. As far as to look at where wife is, the court gave her a bigger share. The court gave her 5% more than the husband, and so that's why to look at where wife is now compared to where she was. Where she was then was that she worked for four years earning the only income that the family had while he was going to school so that he could get his license and so that he could become the professional that he became. That's where she started, being the sole income provider for the family. Correct, and after staying home for all those years, she was able to return to the workforce, get her license in physical therapy. But you see, the point I'm making or trying to make is that she really did contribute to a better lifestyle because she sacrificed by working full-time and providing the only income for the family, not sacrifice, but did what spouses often do to let him go to school to get that license, which is the most valuable thing in a marriage. Yes, and by her allowing him to do that, he was able to open up his own practices, become an oral surgeon. So, what's wrong with giving her 5% more than... Making the assumption, and your point is I guess it's not fair to make the assumption, but making the assumption that he's going to return to the income levels that he had before his addiction as a successful oral surgeon, right? Yes. That he's going to make more money than she did. That's the assumption, but at the time that the division of assets were allocated, his income was zero and hers was close to $80,000. Well, if that's the assumption and it's reasonable based on the evidence presented, what's the problem? Because we're actually looking at the whole picture. Right. The problem is that it's not that he just suffered some lame years. The problem is that he ended up losing his license because of addiction issues, and so there's no guarantee that he's going to get back to where he was earning the amount he was earning. Before these parties divorced, he was earning significant money, but that all came crashing to a halt when he had addiction issues. So, there's no guarantee he's going to get back to that amount of money that he was making at one point. The second issue that my client argues is that there was no dissipation because he used non-marital property for personal uses. Divorce was filed in June of 2009, and in September, a couple months later in 2009, there was an order sending maintenance and support. My client's arguing that the income from when the divorce was filed to December of 2010, when these purchases were made, his income is non-marital. 750-ILCS-503A lists exemptions to marital property. Subsection 5 provides that maintenance and support that wife received is non-marital. My client's arguing that his income that he retains is non-marital as well. If it was marital, then the court would be burdened by questioning spending habits during the dissolution of the parties. The court's ruling finding dissipation should be reversed because non-marital funds were used to make these purchases. The third issue is maintenance. The court ordered $300 for 12 months, $500 for 18 months, and $1,000 for 90 months, which was to commence on January 1, 2013. 750-ILCS-5-502 lists 12 statutory factors, which the court discussed several of these factors in its order. The first was marital apportionment. The court looked at what the wife received versus what the husband received, and the wife had received about $90,000 more than the husband. The court also noted the ages, that these parties were both in their early 50s. The court also noted that the net income of the parties, based on financial affidavits that were submitted prior to the hearing, was that the husband's income subtracting his child support and added to the wife's income, their net income is virtually the same. The ruling is based on speculation that the husband's income won't increase over time, because starting July 1, 2015, he is to pay $1,000 per month for 90 months. The wife is a licensed physical therapist. She's employed full-time. Her income has increased since the dissolution began, whereas her husband has had income of zero and has had to rebuild since then. The wife has shown to be able to support herself, and the husband has regained his license in July of 2012, but there's no evidence that he's going to be able to successfully return to where he was at at that point. For these reasons, my client requests that the maintenance order be reversed and amended to the trial court level. Thank you, counsel. Ferguson. Thank you, Your Honor. May it please the court. Counsel. Counsel Cunningham. Thank you for the opportunity to argue before you again this afternoon, Your Honors. This case is really a fairly straightforward application of the various provisions of the Illinois Marriage and Dissolution of Marriage Act, along with the decisional law that's grown up interpreting those provisions. Counsel does accurately state the issues, but does not really go through and look at the various factors that the statute offers to the degree of detail or to the degree that the record supports those factors. If we look at those factors each in isolation, there's ample support to find favor as to each isolated factor in support of the award that the trial court made, both in terms of the unequal yet just division, the equitable apportionment of the property, and in terms of the maintenance that was awarded. Your Honor is absolutely correct that Mrs. Jensen did, in fact, support this family as the sole breadwinner at a critical time of the marriage, at the inception of the marriage, with one young child and a 2B oral surgeon in school. Learned counsel characterizes that as she worked early in the marriage. Well, in fact, I believe that a better characterization of her efforts is that she put him through grad school. She caused to issue the most valuable marital asset here. It is equally true that Dr. Jensen was primarily, through his employment efforts, the primary responsible party for accumulating the marital estate, for accumulating the marital wealth. But along with that same factor, we must also consider the significant deterioration of that marital estate and that marital wealth. And as much as he was primarily responsible for the creation of those monies and that estate, he was also primarily responsible for the deterioration, the devaluing of that estate. If we look at the exhibits that were adduced at trial, the Jensens, by their own sworn financial statement, valued Dr. Jensen's practice in excess of $1 million. By the time that the addiction issues had settled in, by the time that this case was tried, that was devalued to $6,000. So this idea that he was primarily responsible, we also have to consider his full responsibility on both sides of that coin, if you will. We also should not overlook her contribution to trying to save her husband from these addiction issues. It was she that was instrumental in his rehabilitation and the intervention. It was she who carried the mortgage payment and indeed paid more towards the principal mortgage obligation that was required during this most disruptive period of the good doctor's life. It was she that continued to support the offspring of the marriage and their college pursuits. She's been criticized for her spending habits in both of the briefs that were filed in this case, and counsel and arguant conveniently forgets that she was in fact supporting the college offspring. We do have to necessarily look at the dissipation of the marital estate and the court's unequal yet just division. I submit to your honors that this is an archetypal example of dissipation, both in terms of the way that it was framed procedurally at the trial court and upon the factual analysis both. We have a marriage that is undergoing an irreconcilable, irretrievable breakdown. Whichever parlance the court prefers, it appears both ways in the case law. We have spending by Dr. Jensen with regard to cash gifts, earrings, and an engagement ring, while the marriage remains intact for his paramour and eventual wife, Sarah Tobias. There is not a more clear-cut example than I can imagine of dissipation. The argument that we should somehow now engraft an additional exception to the creation or to the genesis of marital property in the Act is not supported by anything except a blanket assertion that it should be done. There's no controlling authority. There's not even any influential authority which has been raised or advanced in support of that particular notion or proposition. And the reason that there isn't is because the statute is very clear. Adopting that argument would have the effect of creating a common-law dissolution of marriage here in the state of Illinois. We do not recognize common-law marriage here in the state of Illinois. We're not in Kentucky. We are, in fact, in Illinois. The idea of men creating somehow a common-law dissolution of marriage absolutely flies in the face of the statute. One of the most fundamental concepts of the Illinois Marriage and Dissolution Marriage Act is the definition of marital property. To accept the argument that learned counsel advances would be to inject tumult into the entire statutory scheme, into the most fundamental component of what it is to have a proceeding under the IMVMA. It is an archetypal example of dissipation. And it should be considered not only under the factors of allocation of the marital estate, it should clearly be affirmed in the course of this appeal. We do have a lengthy marriage here. Counsel points out that, in fact, my client, Elizabeth Jensen, was unemployed, attending to familial responsibilities, attending to household and domestic responsibilities, and raising the party's three children. That, too, has been accorded appropriate weight. Counsel argues that her income doubled, and I want to point out that that is an erroneous argument. The income doubled to the extent that she began working midway through the year in 2008. In reality, her wages have been fairly static over the course of her resumption of gainful employment. Working through the balance of these factors, the custody of the youngest minor child was awarded to my client. At the time that the allocation was made, which was approximately a 55-45 split, the allocation was necessarily in lieu of maintenance, which is how we come back a second time. If the court recalls, there was not a specific maintenance award awarded, which is why the initial appeal was dismissed. It was reserved, giving the court its want of jurisdiction. At the same time, child support was reduced. At the same time, the court declined to make provision for Section 513 post-high school educational expenses. If we want to focus on what was going on at the time the property disposition was to become effective, we have to take into account these other lack of monies coming from the other side of the V, so to speak. With regard to the future acquisition of assets and income, the evidence in the record shows that my client's ability to continue in her chosen field as a physical therapist would be hindered by certain physical limitations. I think I've covered the dissipation argument. If anyone had any further questions with regard to that component of this, I'd be happy to take them. In arguing with regard to the maintenance, we hear words such as an estimation, an assumption, a speculation. That is not truly the situation here. This is a unique situation where we have a reasonable and logical inference upon which the court predicated a particular decision with regard to maintenance. We return some 18 months later to find that Dr. Jensen has, in fact, rebuilt his practice, has, in fact, acquired a new home that is substantially similar in value and quality to the marital home which was sold, had, in fact, been able to pay himself combined wages of $208,000 at the time that maintenance was set. To suggest that it was an assumption or a speculation is fine, but that assumption, that speculation, that logical inference is borne out by the record here. It is an unusual scenario where we see that a trial court's reasonable inference comes to fruition. It happened the way that the trial court predicted that it would happen. That is not an abuse of discretion. That is an accuracy that is in support of the award that the trial court made. If we look at the specific earnings here, as reflected on the financial affidavit, which does show nearly equal income at the time maintenance was set, conveniently ignoring the other $112,000 that Dr. Jensen paid himself by drawing personal checks on the corporate account, we see that Dr. Jensen's weekly income during the relevant period was approximately $5,400, I believe. Taking her salary, which remained fairly static based on the record here, we see that she was earning approximately $1,700 per week. During that relevant period of time, based on the trial court's terrorist award of maintenance, Mrs. Jensen was ordered to receive weekly maintenance in the amount of $69.23. He was earning $5,400 per week, she earning $1,700 per week, and her maintenance award was $69.23. I respectfully submit to this court that that is a very conservative award on severely dramatic facts. Also, in fairness to the trial court, the money he was receiving included some of the money that he received as a part of the awards, correct? That is true, Your Honor. From the exam money that he was drawn out of, he didn't receive any money. That is true. But what is the appropriate consideration, as I understand the decisional law, is to consider income from all sources. And various trial courts, various courts of appeals have looked at those income from all sources. It is true that a portion of that money was spent down from the marital estate, which he was awarded, but it was coming in the form of him writing checks on a business account. And if we take a look at income from all sources, it is still $69 per week, a conservative award, based on fairly extreme differential in income. With regard to the fifth factor, the time necessary to rehabilitate the career, we have an attorney here in her mid-50s who had foregone 16 or 17 years, I believe, out of the workforce. There is no evidence to suggest that any amount of time, any amount of education would rehabilitate her as a physical therapist to the extent that she could recapture or to the extent that she could reaccumulate the wealth from the marriage. The marital standard of living is another factor in considering maintenance. The court properly considered the nature of the assets, a home in excess of $390,000, a European timeshare, a classic Mustang, and more than $70,000 in tangible personal property. If we look at the situation when the maintenance award became effective, Dr. Jensen had purchased a home in excess of more than $300,000, Mrs. Jensen for $115,000. He had essentially been able to recreate and recapture the standard of living that was afforded both parties during the term of the marriage. If we also look at the differential in spending based on the various financial affidavits shown in the case, she shows a significant uptick in the spending of Dr. Jensen with a significant depreciation in the spending habits of Mrs. Jensen for which she has been consistently criticized. I believe that I've already covered the contributions to the career and career potential by putting the good doctor through graduate school, not to mention that the record reflects that she was instrumental in beginning his dental practice, working together with Dr. Jensen to do what was necessary to open that practice and to advance that practice. So again, with respect to both the allocation and division of the marital estate and the maintenance, if we look at each factor of isolation, there is ample support in this record to affirm the trial court, which is, of course, what I'm asking you to do here today. There's nothing but mere blanket assertions that there was some wrongdoing. Certainly, reasonable minds can differ, but that is the standard here, whether no reasonable mind would come to this conclusion. And I respectfully posit that any reasonable mind, upon an accurate and adequate examination of the record and of the facts in this case, would come to the conclusion that the trial court did, which I characterize as a conservative award on some fairly extreme facts. I thank you for your time and attention. Thank you, counsel, for stepping in and your vote. Thank you. Counsel had highlighted the significant deterioration of Mr. Jensen's practice of $1 million to $6,000. And he does not dispute that. He doesn't deny that his practice earned that amount of money, and then by the time the parties divorced, it was valued at $6,000. His argument is that there's no guarantee that he'll return back to that $1 million mark, because as history has shown, he was earning that money and addiction issues caused him to fall. Counsel pointed out that the future acquisition of property by his client is hindered by physical limitations, but there's no evidence in the record that she's missed work or she has not been promoted or somehow has missed opportunities due to certain physical limitations. The record shows that she has returned to work. She's making $70,000 to $80,000 a year, and there's no evidence that that job is going to be taken away from her. Thank you. Just a second. I wanted to ask you about your argument on dissipation with regard to your client and the trial court found dissipation. The idea about dissipation is to try to protect marital assets during the time of marriage. How were any of the expenditures your client made in behalf of his parent or from gifts to her consistent with any of the interests of the marital estate? They were not in the interest there for his sole personal use. Why the dissipation? Because he used income earned after the divorce was filed. This was not money taken from joint accounts. This was not money. When the divorce is filed before the client is divorced, that ends the concerns about dissipation of marital assets? No, it does not, but this money came from his income, not from retirement savings or not from joint accounts. This came from an income he earned, which is still set for child support purposes, for maintenance purposes. Okay. Thank you. Thank you. Thank you. Thank you. Any other questions? Any more?